THE STATE, DEFENDANT IN ERROR, v. JOHN HOFFMAN, PLAINTIFF IN ERROR.

Argued June 21, 1904—Decided November 14, 1904.

1. The statutory qualifications of grand jurors and petit jurors are now prescribed by the provisions of section 6 of the Jury act of March 27th, 1874, as modified by an amendment of April 21st, 1876, and for the lack of any such qualifications a right to challenge is expressly given. The proviso to section 6 that no exception to any such juror because of the lack of such qualification shall be allowed after he is sworn, applies to grand jurors.

2. An objection to a grand juror because he was over the statutory age cannot be allowed, when made after he was sworn, by a motion to quash the indictment, upon proof of the fact.

On error to the Gloucester county Quarter Sessions.

For the plaintiff in error, *Robert S. Clymer.*

For the defendant in error, *Lewis Starr,* prosecutor of the pleas.

The opinion of the court was delivered by

MAGIE, CHANCELLOR. This writ brings up a judgment of the Supreme Court affirming the conviction of plaintiff in error in the Gloucester Quarter Sessions upon an indictment for the illegal sale of liquor.

The case was presented to the Supreme Court upon a writ of error and assignments of error. The "entire record" of the trial was not brought up under section 136 of the Criminal Procedure act of 1898. *Pamph. L., p.* 915.

The sole ground for reversal disclosed by the argument in this court is founded on the fifth assignment of error, challenging the refusal of the trial court to quash the indictment.

The bill of exceptions returned with the writ of error shows that upon a motion to quash the indictment in the

Quarter Sessions plaintiff in error was permitted to introduce evidence, and one of the grand jury of the term at which the indictment was presented, being called as a witness, testified that he was over the age of sixty-five years for three years prior to the meeting of the grand jury. The motion was denied and an exception was sealed to such denial. The only contention in the Supreme Court was that the Quarter Sessions erred in refusing to quash the indictment. The Supreme Court sustained the action of the Quarter Sessions and error in that respect is alone relied on here.

It has been repeatedly declared by our courts that a motion to quash an indictment is addressed to the discretion of the court and is not *ex debito justitiæ*. *State* v. *Hageman*, 1 *Gr*. 314; *State* v. *Dayton* 3 *Zab*. 49; *Proctor* v. *State*, 26 *Vroom* 472; *State* v. *Beard*, 1 *Dutcher* 384. This must be considered as settled law in respect to all motions to quash, grounded upon the alleged insufficiency of the charges in the indictment to support a judgment of conviction, and it has been questioned in this court whether an assignment of error directed to such a refusal can draw the defects of the indictment into review when no demurrer or motion in arrest of judgment has been interposed. *Moschell* v. *State*, 24 *Vroom* 498; *Parks* v. *State*, 33 *Id*. 664.

But the motion to quash in this case was not made upon any defects or insufficiencies appearing on the face of the indictment, or on the record, but on an alleged defect disclosed by evidence produced before the court.

In *Gibbs & Stanton* v. *State*, 16 *Vroom* 379, the Supreme Court had before it a record of conviction which disclosed that the defendants in the sessions had interposed a plea in abatement to the indictment, and therein charged ill will and malice on the part of some of the grand jurors and malicious misconduct of the sheriff in selecting the grand jury; that the prosecutor had demurred to the plea and the sessions had sustained the demurrer. It was assumed that the facts presented by the plea would have furnished good ground for a challenge to the array and a challenge to

each of the grand jurors named. But it was settled (Chief Justice Beasley writing the opinion of the court) that such facts could not be presented by a plea of abatement and that the demurrer to that plea had been properly sustained in the court below. But the learned Chief Justice proceeded to declare that the relief of the defendants could have been obtained either by a challenge before the indictment was found or by a motion to quash afterwards. Strictly speaking, the *dictum* was not required for the decision of the case, which was entirely disposed of by the approval of the action of the trial court in sustaining the demurrer and by the further conclusion expressed that if the "legal flaw" contended for existed, it would not result in a reversal of the conviction, because the record showed that the defendants were convicted upon their own confession, and that therefore the alleged error had not prejudiced them in maintaining their defence on the merits within the meaning of section 88 of the Criminal Procedure act then in force.

The judgment in that case was affirmed in this court upon the opinion delivered in the Supreme Court. It does not appear that it was intended to approve the doctrine that ground for a challenge of a grand juror could be presented and considered on a motion to quash an indictment. The question was not argued in this case, and no opinion need be expressed thereon, as we find, assuming the right to maintain such a challenge in general, the challenge here relied upon was presented too late.

The rule of the common law, which requires grand jurors to be *"probi et legales homini"* (2 *Hale P. C.* 154), was early supplanted in this state by legislative provisions fixing the qualification of grand jurors. By the provisions of section 2 of the "Act relative to juries and verdicts," passed November 19th, 1797 (*Pat. L., p.* 259), every grand juror was required to be a citizen of the state, a resident of the county, above twenty-one and under sixty-five years of age, and having freehold in lands. Lack of the required qualification was expressly declared to be good cause of challenge.

By the provisions of section 7 of the same act the qualifications of petit jurors were also prescribed, and the lack of the required qualifications was also made good cause of challenge, with a proviso, however, that no exception to a petit juror on account of citizenship, estate, age or other legal disability should be allowed after he was sworn.

These provisions were re-enacted in identical terms in section 2 and section 7 of the "Act relative to juries and verdicts," approved April 15th, 1846. *Rev. Stat., p.* 965.

The requirement of a freehold qualification was eliminated with respect to both grand and petit jurors by the "Act to abolish the freehold qualification," approved February 28th, 1851. *Pamph. L., p.* 93.

The act of 1846 was repealed by section 76 of the general repealer of the revision, approved March 27th, 1874. *Rev. Stat., p.* 142. The provisions of section 2 and section 7 of that act were consolidated in section 6 of the "Act concerning juries," approved March 27th, 1874 (*Rev. Stat., p.* 371), the language of which is as follows:

"6. Every person summoned as a grand juror in any court of this state, and every petit juror returned for the trial of any action or suit of a civil or criminal nature, shall be a citizen of this state and resident within the county from which he shall be taken, and above the age of twenty-one and under the age of sixty-five years; and if any person who is not so qualified shall be summoned as a grand juror or as a juror on the trial of any such action in any of the courts of this state, it shall be good cause of challenge to such juror, who shall be discharged upon such challenge being verified according to law, or on his own oath or affirmation in support thereof; *provided,* that no exception to any such juror on account of his citizenship, or age, or any other legal disability shall be allowed after he is sworn or affirmed."

, By a supplement to the act last mentioned, approved April 21st, 1876 (*Rev. Stat., p.* 1853), an additional cause of challenge was added, immaterial to the present inquiry.

The proviso which, in the acts of 1797 and 1846, limited

objections for the lack of the prescribed qualifications of petit jurors to the period before the juror was sworn, is by the language of section 6 of the revised act now in force made applicable both to grand and petit jurors. The language of the section gives a challenge on that ground to any-one summoned as a grand juror, or as a juror on the trial of any action. When the proviso then declares that no ex-ception to "any such juror" on account of lack of the pre-scribed qualifications shall be allowed after the juror is sworn, the grammatical construction applies the proviso to both cases.

It is suggested that the proviso, although on its face ap-plicable to both grand and petit jurors, may be restricted by judicial construction so as to apply only to petit jurors, as it did prior to the revision of 1874. The suggestion is that when acts previously existing are incorporated in a revision, the language may be given the meaning which it had in the old statutes. Many cases in our courts have recognized and applied this construction to consolidations of existing statutes in a revision. The principle adopted is based upon the duty of the courts to construe such legislation by ascertaining the legislative intent by the context, the effects and the conse-quences, and the reason and spirit of the law. The ques-tion of legislative intent is necessarily involved. In the lead-ing case in the Supreme Court, Chief Justice Green declared that a construction contrary to that exhibited by the lan-guage of a previous law ought not to be adopted if thereby the policy of the consolidated act is subverted, or its material provisions defeated. *In re Murphy, 3 Zab.* 180. In this court it was declared that in the construction of a statute which is a consolidation of previous laws the same meaning should be given to it which was accorded to the original statutes unless a different legislative intent is plainly apparent. *Smith* v. *Regan, 25 Vroom* 167. Again, it was declared in this court that a rearrangement of existing statutes in a re-vision of the laws does not usually change the significance. *Pomeroy* v. *Mills, 10 Stew. Eq.* 578.

In seeking to ascertain the legislative intent in enacting the section of the present Jury act—consolidating the provisions of previous acts respecting juries—I think it is not open to doubt that the legislature has power to prescribe the qualifications of grand jurors and, incidentally, to prescribe how an objection for the lack of such qualifications should be presented, and, at least, if some mode of effectual objection be permitted within what time it must be made to be effectual. The right of challenge to a grand juror for such a lack of the prescribed qualifications was given by the act of 1797 and has been continued by all subsequent legislation. Whether the mode prescribed for objection is as effectual or beneficial as some other mode is a question purely for the legislature. It results that the legislature might, in prescribing how an objection to the lack of qualification of grand jurors should be made, viz., by challenge, also prescribe that no objection of that sort should be made after the time for challenge had expired, *i. e.*, after the juror had been sworn.

It follows that the language of the section under review, having a grammatical and natural application to the objection for lack of the prescribed qualifications of grand jurors as well as of petit jurors, and in that respect in no way subverting the policy or defeating the provisions of the consolidated act, must be considered as expressing a legislative intent to which the courts must give effect.

It results that the objection presented by the motion to quash and grounded on the lack of qualification of one of the grand jurors, because he was beyond the age of sixty-five years, which would have been good by way of challenge, came too late after the juror was sworn, and it was properly overruled by the trial court.

The judgment must be affirmed.

*For affirmance*—The Chancellor, Garrison, Fort, Pitney, Bogert, Vredenburgh, Vroom, Green, Gray. 9.

*For reversal*—None.